IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Tony T-Juan Sweet, | ) |
| | ) |
| Plaintiff, | )  C.A. No. 6:21-00046-HMH-JDA |
| | ) |
| vs. | ) |
| | )  **OPINION & ORDER** |
| | ) |
| Andrew Reese, Michael Rainey, | ) |
| John Thomas Edwards, | ) |
| | ) |
| Defendants. | ) |

This matter is before the court with the Report and Recommendation of United States Magistrate Judge Jacquelyn D. Austin, made in accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 of the District of South Carolina.[1]  Tony T-Juan Sweet ("Sweet"), a state prisoner proceeding pro se, brings this action pursuant to 42 U.S.C. § 1983, alleging that his person and property were illegally seized and unlawfully searched in violation of his Fourth Amendment rights by Defendants Deputy Andrew Reese ("Deputy Reese"), Deputy Michael Rainey ("Deputy Rainey"), and Deputy John Thomas ("Deputy Thomas"), (collectively "Defendants") of the Greenville County Sheriffs Office ("GCSO"). (Compl., generally, ECF No. 1.)  The Defendants filed a motion for summary judgment. (Mot. Summ. J., ECF No. 18.)  In her Report and Recommendation, Magistrate Judge Austin recommends granting in part and denying in part Defendants' motion for summary judgment. (R&R, generally, ECF No. 24.)

---

[1] The recommendation has no presumptive weight, and the responsibility for making a final determination remains with the United States District Court. See Mathews v. Weber, 423 U.S. 261, 270 (1976).  The court is charged with making a de novo determination of those portions of the Report and Recommendation to which specific objection is made.  The court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or recommit the matter with instructions. 28 U.S.C. § 636(b)(1).

For the reasons stated below, the court adopts the magistrate judge's Report and Recommendation.

## I. FACTUAL AND PROCEDURAL HISTORY

Viewed in the light most favorable to Sweet, the non-movant, the record reflects the following.

This matter arises from Sweet's arrest at 320 Bailey Street in Greenville, South Carolina ("the residence"). (Compl. 5, ECF No. 1.) At the time of the arrest, Deputy Reese had approximately nine years in total law enforcement experience. (Mem. Supp. Summ. J. Ex. A (Reese Aff. ¶ 2), ECF No. 18-2.) The residence was known to law enforcement as a high crime area with pervasive drug use typified by transient visitors and vehicles not registered to the address frequently arriving and departing. (Id. Ex. A (Reese Aff. ¶ 3), ECF No. 18-2.) Deputy Reese had significant prior knowledge that illegal drugs were often sold and trafficked from the residence based on interviews with multiple subjects and information acquired from other deputies. (Id. Ex. A (Reese Aff. ¶ 4), ECF No. 18-2.) He was also personally involved in two separate arrests for drug offenses arising from traffic stops of vehicles arriving at the residence on December 14, 2019 and January 7, 2020. (Id. Ex. A (Reese Aff. ¶ 5), ECF No. 18-2.) In addition, Deputy Reese was aware that Deputy Edwards had been involved in a drug arrest at the residence on December 29, 2019. (Id. Ex. A (Reese Aff. ¶ 5), ECF No. 18-2.) All three drug arrests occurred within the month preceding Sweet's arrest. Because of this, Deputy Reese would regularly surveil the property, driving by the residence approximately ten times during his shifts. (Mem. Supp. Summ. J. Ex. A (Reese Aff. ¶ 3), ECF No. 18-2.)

At approximately 7:45 p.m. on January 12, 2020, Deputy Reese was patrolling the area of the residence when he observed a vehicle backing out of the driveway. (Id. Ex. A (Reese Aff. ¶ 6), ECF No. 18-2.) Upon seeing Deputy Reese's patrol vehicle, the vehicle changed direction and pulled forward towards the residence. (Id. Ex. A (Reese Aff. ¶ 6), ECF No. 18-2.) Deputy Reese initiated a traffic stop "to speak with the occupant [of the vehicle]," because "[b]ased on the extensive [criminal activity] at [the] residence[,] [he] felt that the occupant was likely involved in criminal activity." (Id. Ex. D (GCSO Incident Report 5), ECF No. 18-5.) Deputy Reese initiated the traffic stop by pulling into the driveway behind the vehicle, blocking the exit. (Id. Ex. D (GCSO Incident Report 5), ECF No. 18-5.)

Sweet exited the vehicle and was given an order to return to the vehicle. (Mem. Supp. Summ. J. Ex. D (GCSO Incident Report 5), ECF No. 18-5.) Around this time, Deputy Edwards arrived after receiving a routine request for backup. (Id. Ex. B (Edwards Aff. ¶ 4), ECF No. 18-3.) Deputy Edwards observed Sweet running to the back yard of the residence. (Id. Ex. B (Edwards Aff. ¶ 4), ECF No. 18-3.) Deputy Reese and Deputy Edwards began to search for Sweet, but were unable to find him. (Id. Ex. B (Edwards Aff. ¶ 4), ECF No. 18-3.) On a second search, they observed a rear door to the house open and found Sweet hiding behind a trash can. (Id. Ex. B (Edwards Aff. ¶ 4), ECF No. 18-3.) After receiving several commands to move away from the residence, Sweet complied and was detained for further investigation. (Mem. Supp. Summ. J. Ex. A (Reese Aff. ¶ 8), ECF No. 18-2); (Id. Ex. B (Edwards Aff. ¶ 4), ECF No. 18-3.) Deputy Reese conducted a search of the area where Sweet was hiding and found two bags of a clear crystal substance and a key to the vehicle Sweet was driving. (Id. Ex. A (Reese Aff. ¶ 8),

ECF No. 18-2.) The substance field tested positive for methamphetamine and Sweet was arrested. (Id. Ex. A (Reese Aff. ¶ 8), ECF No. 18-2.)

A search of the vehicle incident to Sweet's arrest revealed 1.22 pounds of methamphetamine, 2.1 grams of cocaine, 3.8 grams of marijuana, prescription pills, drug paraphernalia, multiple cell phones, and a Smith & Wesson 9 mm handgun listed as stolen in the National Crime Information Center ("NClC") database. Sweet was also in possession of $5,733.00 in cash on his person. (Id. Ex. A (Reese Aff. ¶ 9), ECF No. 18-2.) Deputy Reese identified Sweet, and an NCIC database search revealed four unrelated and outstanding general sessions bench warrants. (Id. Ex. A (Reese Aff. ¶ 10), ECF No. 18-2.) Deputy Reese transported Sweet to the Greenville County Detention Center, where he was held on several drug and weapons charges stemming from this arrest and the unrelated bench warrants. (Mem. Supp. Summ. J. Ex. D (GCSO Incident Report 6), ECF No. 18-5.) Upon Sweet's release in July 2020, the solicitor dismissed the forfeiture action concerning the $5,733.00, and the GCSO returned the money to him. (Id. Ex. D (GCSO Incident Report 27-29), ECF. No. 18-5; (Compl. 6, ECF No. 1.)[2]

On January 3, 2021,[3] Sweet filed the instant case. (Compl., ECF No. 1.) Defendants filed a motion for summary judgment on April 16, 2021. (Mot. Summ. J., ECF No. 18.) Sweet filed a response in opposition on May 24, 2021. (Pl.'s Resp. Opp'n Summ. J., ECF No. 21.)

---

[2] The vehicle Sweet was driving was registered to another individual. (Id. Ex. A (Reese Aff. ¶ 12), ECF No. 18-2.) The vehicle was towed and the owner was notified that it had been recovered. (Id. Ex. A (Reese Aff. ¶ 12), ECF No. 18-2.) The vehicle was unclaimed and ultimately sold to satisfy the towing and storage charges. (Id. Ex. D (GCSO Incident Report 14), ECF No. 18-5.)

[3] Houston v. Lack, 487 U.S. 266, 270 (1988).

Defendants filed a reply on June 1, 2021. (Reply, ECF No. 22.) On July 2, 2021, the magistrate judge issued the Report and Recommendation recommending that the court grant in part and deny in part Defendants' motion for summary judgment. (R&R, generally, ECF No. 24.) On July 16, 2021, Defendants filed objections to the Report and Recommendation. (Defs.' Obj., ECF No. 29.) On August 18, 2021, Sweet filed his objections to the Report and Recommendation. (Pl.'s Obj., ECF No. 30.) This matter is ripe for review.

## II. DISCUSSION OF THE LAW

### A. Summary Judgment Standard

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding whether a genuine issue of material fact exists, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in his favor. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

A litigant "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985). "[W]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." Monahan v. Cty. of Chesterfield, Va., 95 F.3d 1263, 1265 (4th Cir. 1996) (internal quotation marks and citation omitted). "[T]he mere existence of some alleged factual dispute between the parties will not

defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of *material* fact." Ballenger v. N.C. Agric. Extension Serv., 815 F.2d l001, l005 (4th Cir. 1987) (internal quotation marks and citation omitted).

### B. Report and Recommendation

In her Report and Recommendation, Magistrate Judge Austin recommends granting in part and denying in part Defendants' motion for summary judgment. First, she recommends, and Sweet concedes, that summary judgment should be granted to Deputy Rainey on all claims, including on the basis of qualified immunity, because he was not involved in any of the events alleged in Sweet's complaint. (R&R 10, ECF No. 24; Pl.'s Resp. Opp'n Mot. Summ. J. 13, ECF No. 21.) Finding that the initial stop of Sweet's vehicle was not supported by probable cause or reasonable suspicion, the magistrate judge also recommends denying summary judgment to Deputy Reese to the extent that he violated Sweet's Fourth Amendment rights by initiating the traffic stop. (R&R 10-14, ECF No. 24.) In addition, the magistrate judge further noted that Sweet is entitled to, at most, an award of nominal damages due to the minimal amount of time that he was unlawfully seized. (R&R 14, ECF No. 24.)

Finally, the magistrate judge recommends granting summary judgment to all Defendants on Sweet's § 1983 claim to the extent that he challenges his arrest or the searches of his person and property, because Deputies Reese and Edwards had probable cause to arrest Sweet after discovering the methamphetamine where he was hiding and the outstanding, unrelated bench warrants. (R&R 15-17, ECF No. 24.)

### C. Objections

Both parties filed objections to the Report and Recommendation. Objections to the Report and Recommendation must be specific. Failure to file specific objections constitutes a waiver of a party's right to further judicial review, including appellate review, if the recommendation is accepted by the district judge. See United States v. Schronce, 727 F.2d 91, 94 & n.4 (4th Cir. 1984). In the absence of specific objections to the Report and Recommendation of the magistrate judge, this court is not required to give any explanation for adopting the recommendation. See Camby v. Davis, 718 F.2d 198, 199 (4th Cir. 1983).

### 1. Sweet's Objections

Upon review, the court finds that many of Sweet's objections are non-specific, unrelated to the dispositive portions of the magistrate judge's Report and Recommendation, or merely restate his arguments. However, the court was able to glean three specific objections. Sweet argues that the magistrate judge erred in (1) concluding that the arrest was supported by probable cause, (2) failing to address his malicious prosecution claim, and (3) finding that Sweet is entitled to only nominal damages. (Pl.'s Obj., generally, ECF No. 30.)

### a. Sweet's Arrest

Sweet argues that the magistrate judge erred in concluding that his arrest was supported by probable cause. Specifically, he takes issue with the magistrate judge's "erroneous use" of the attenuation doctrine, and "reliance" on Utah v. Strieff, 136 S. Ct. 2056 (2016). (Pl.'s Obj. 3, ECF No. 30.)

As an initial matter, the court notes that the magistrate judge explicitly declined to address the Defendants' attenuation argument. (R&R 15 n.6, ECF No. 24.) Instead, she

7

concluded that Defendants had probable cause to arrest Sweet once they discovered that he had unrelated, outstanding bench warrants. In addition, the magistrate further found that the discovery of methamphetamine where Sweet was hiding provided a separate justification for his arrest. (R&R 15, ECF No. 24.) For the reasons stated below, the court concludes that Defendants had probable cause to arrest Sweet.

### i. Attenuation Doctrine

The attenuation doctrine is an exception to the exclusionary rule in **criminal** cases. See, e.g., Strieff, 136 S. Ct. at 2061. The exclusionary rule "encompasses both the primary evidence obtained as a direct result of an illegal search or seizure and . . . evidence later discovered and found to be derivative of an illegality, the so-called fruit of the poisonous tree." Id. (internal quotation marks omitted). The attenuation doctrine provides that "[e]vidence is admissible when the connection between unconstitutional police conduct and the evidence is remote or has been interrupted by some intervening circumstance, so that the interest protected by the constitutional guarantee that has been violated would not be served by suppression of the evidence obtained." Id. (internal quotation marks omitted).

As explained below in addressing Defendants' objections, the initial stop of the vehicle Sweet was driving was not supported by probable cause or reasonable suspicion. However, even if Deputy Reese's initial conduct violated Sweet's Fourth Amendment rights, Defendants are not automatically liable under § 1983 for their subsequent decision to place Sweet under arrest. Contrary to Sweet's assertion, there is no fruit of the poisonous tree doctrine in a § 1983 civil case. See Pa. Bd. of Probation & Parole v. Scott, 524 U.S. 357, 364 n.4 (1998) ("[W]e have generally held the exclusionary rule to apply only in criminal trials."). In short, the magistrate

judge correctly concluded that the attenuation doctrine is simply inapplicable in this civil action.

Accordingly, after review, the court finds that Sweet's objection regarding the attenuation doctrine is without merit.

### ii. Utah v. Strieff [4]

In addition, Sweet's objection regarding the magistrate judge's "reliance" on Utah v. Strieff, 136 S. Ct. 2056 (2016), in concluding that there was probable cause to make the arrest is without merit. While Strieff was a criminal case dealing with the application of the attenuation doctrine to a police officer's discovery of a defendant's pre-existing arrest warrants subsequent to an unlawful seizure, the magistrate judge properly cited Strieff for the generally-accepted proposition that "[a] warrant is a judicial mandate to an officer to conduct a search or make an arrest, and the officer has a sworn duty to carry out its provisions." 136 S. Ct. at 2062 (quoting United States v. Leon, 468 U.S. 897, 920 n.21 (1984)).

The discovery of an outstanding arrest warrant provides law enforcement with no discretion. Id. 136 S. Ct. at 2062-63 ("[The officer's] arrest of [the defendant] was a ministerial act that was independently **compelled** by the pre-existing warrant.") (emphasis added); see also Porterfield v. Lott, 156 F.3d 563, 568 (4th Cir. 1998) (citing Brooks v. City of Winston-Salem, 85 F.3d 178 (4th Cir. 1996)) ("[A] public official cannot be charged with false arrest when he arrests a defendant pursuant to a facially valid warrant."). Thus, the arrest was supported by probable cause based on the unrelated, outstanding warrants. Moreover, the discovery of methamphetamine where Sweet was hiding also independently provided probable cause to arrest Sweet. Ker v. California, 374 U.S. 23, 36-37 (1963) (concluding that officers had

---

[4] 136 S. Ct. 2056 (2016).

probable cause for arrest based on their knowledge that the suspect was in close proximity to illegal drugs). Under 42 U.S.C. § 1983, arresting officers are not liable for false arrest where the arrest is supported by probable cause.

Accordingly, after review, the court finds that Sweet's objection is without merit.

### b. Malicious Prosecution

Sweet argues that the magistrate judge failed to address his malicious prosecution claim. (Pl.'s Obj. 7, ECF No. 30.) The Defendants did not move for summary judgment on Sweet's § 1983 claim based on malicious prosecution,[5] and therefore, the magistrate judge did not directly address the claim in her Report and Recommendation.

A "malicious prosecution claim under § 1983 is properly understood as a Fourth Amendment claim for unreasonable seizure which incorporates certain elements of the common law tort." Lambert v. Williams, 223 F.3d 257, 261 (4th Cir. 2000). To state a claim for malicious prosecution under § 1983, "a plaintiff must allege that the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiffs favor." Evans v. Chalmers, 703 F.3d 636, 647 (4th Cir. 2012) (citing Durham v. Horner, 690 F.3d 183, 188 (4th Cir. 2012)). The crux of Sweet's complaint is that the initial stop, and his subsequent arrest, were not supported by probable cause. (Compl., generally, ECF No. 1.) Nowhere does he allege any deficiency in the bench warrants

---

[5] Sweet's complaint only mentions malicious prosecution without any supporting factual allegations. Defendants construed Sweet's malicious prosecution claim as a state law claim arising under South Carolina law, and they argued in their motion for summary judgment that all state law claims should be dismissed for want of jurisdiction if the court grants summary judgment on the § 1983 claims. (Mem. Supp. Summ. J. 19-20, ECF No. 18-1.)

issued for his failure to appear on unrelated charges.  Malley v. Briggs, 475 U.S. 335, 344-45 (1987) ("Only where . . . [a] warrant application is so lacking in indicia of probable cause as to render the official belief in its existence unreasonable will the shield of immunity be lost.")  Likewise, he has failed to allege that Defendants played any role in obtaining the warrant, or that Defendants were there to arrest him pursuant to those warrants.  Evans, 703 F.3d at 648 (quoting Wray v. City of New York, 490 F.3d 189, 195 (2d Cir. 2007)) ("[A] police officer is not liable for a plaintiffs unlawful seizure following indictment 'in the absence of evidence that [the officer] misled or pressured the prosecution.'").  Thus, Sweet's complaint alleges a false arrest, rather than a malicious prosecution claim.

As the Fourth Circuit has explained the distinction, "[a] claim for false arrest alleges that a warrantless arrest lacked probable cause; a claim for malicious prosecution alleges that an arrest made pursuant to a warrant lacked probable cause."  Smith v. Munday, 848 F.3d 248, 257 (4th Cir. 2017) (citing Brooks v. City of Winston-Salem. 85 F.3d 178, 181-82 (4th Cir. 1996)); see also Harrington v. City of Nashua, 610 F.3d 24, 32 (1st Cir. 2010) ("Where, as here, a person is arrested without a warrant and before the issuance of any legal process, that arrest does not form part of a Fourth Amendment seizure upon which a section 1983 malicious prosecution claim may be premised.");  Howlett v. Hack, 794 F.3d 721, 728 (7th Cir. 2015) (noting that "a warrantless arrest cannot serve as the basis for a malicious prosecution action" based on Fourth Amendment rights) (internal quotation marks omitted)).

Based on the foregoing, Sweet's § 1983 malicious prosecution claim fails because he does not allege, and there is no evidence, that the warrants were not supported by probable

cause.[6] Moreover, Sweet's allegations regarding a § 1983 false arrest claim necessarily fails on the merits because his arrest for drug possession was supported by probable cause. Deputies Reese and Edwards had probable cause to arrest Sweet after discovering methamphetamine where he was hiding. (Mem. Supp. Summ. J. Ex. A (Reese Aff. ¶ 8-10), ECF No. 18-2.)

"Probable cause" sufficient to justify an arrest requires "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Michigan v. Defillippo, 443 U.S. 31, 37 (1979). Possession, manufacturing, and trafficking of methamphetamine is an offense under South Carolina law. S.C. Code Ann. § 44-53-375. The crystal substance found where Sweet was hiding field tested positive for methamphetamine. (Mem. Supp. Summ. J. Ex. A (Reese Aff. ¶ 8), ECF No. 18-2.) Therefore, there is "no genuine dispute as to any material fact" that Deputies Reese and Edwards had probable cause to believe that Sweet was committing an offense.

Accordingly, after review, the court finds that Sweet's objection is without merit, and this claim fails.[7]

---

[6] To the extent that Sweet is attempting to allege a malicious prosecution claim under South Carolina law, that claim also fails on the merits for the same reason. See Parrot v. Plowed Motor Co., 143 S.E.2d 607, 609 (S.C. 1965) ("In an action for malicious prosecution, the defendant must be absolved from liability if [the] plaintiff fails to show that the prosecution was instituted maliciously and without probable cause.").

[7] Further, although not raised in his objections, to the extent that Sweet is attempting to allege a cause of action for false imprisonment or false arrest in his complaint under South Carolina common law, those claims also fail. Carter v. Bryant, 838 S.E.2d 523, 527 (S.C. Ct. App. 2020) ("False arrest in South Carolina is also known as false imprisonment."); Huffman v. Sunshine Recycling, LLC, 826 S.E.2d 609, 614 (S.C. 2019) ("To prevail on a claim for false imprisonment, a plaintiff must establish that: (1) the defendant restrained the plaintiff, (2) the restraint was intentional, and (3) the restraint was

### c. Nominal Damages

The magistrate judge recommends granting Defendants' motion for summary judgment, except to the extent that Deputy Reese subjected Sweet to an illegal traffic stop. (R&R 17, ECF No. 24.) However, the magistrate judge noted that Sweet would only be entitled to nominal damages for the illegal stop. (Id. 14 n.5, ECF No. 24.) Sweet objects to the magistrate judge's finding regarding nominal damages. (Pl.'s Obj. 9, ECF No. 30.) The Fourth Circuit has explained that "[a]n award of compensatory damages for loss of time requires . . . something more than a brief detention," and "in the § 1983 context [] being seized for a minimal amount of time does not constitute an actual injury warranting compensatory damages." Randall v. Prince George's Cnty., 302 F.3d 188, 209 n.30 (4th Cir. 2002) (citing Norwood v. Bain, 166 F.3d 243, 245 (4th Cir.1999) (en banc) (holding that plaintiffs who were unconstitutionally searched and seized for a brief period of time suffered no loss and were only entitled to nominal damages)).

As more fully discussed below, while the initial stop may have violated Sweet's Fourth Amendment rights, the court finds that the seizure only occurred for a brief period of time before Defendants had probable cause to arrest Sweet. Therefore, Sweet is only entitled to nominal damages for the illegal stop. See Carey v. Piphus, 435 U.S. 247, 266-67 (1978) (holding if plaintiffs were entitled to nominal damages for a procedural due process violation without proof of actual injury, the damages should not exceed one dollar).

Accordingly, after review, the court finds that Sweet's objection is without merit.

---

unlawful. The fundamental issue in determining the lawfulness of an arrest is whether there was probable cause to make the arrest.") Therefore, the existence of probable cause to arrest negates an essential element of a false imprisonment or false arrest claim.

## 2. Defendants' Objections

In their objections, Defendants argue that the magistrate judge erred in concluding that the initial traffic stop of Sweet lacked probable cause or reasonable suspicion, and that Deputy Reese is not entitled to qualified immunity for his decision to effect the stop. (Defs.' Obj. 2, ECF No. 29.)

### a. Reasonable Suspicion[8]

The Fourth Amendment protects against "unreasonable searches and seizures." U.S. Const. amend. IV. A traffic stop is a "seizure" within the meaning of the Fourth Amendment and must be reasonable under the circumstances. See Delaware v. Prouse, 440 U.S. 648, 653-54 (1979). Courts assess the constitutionality of a traffic stop under the standard articulated in Terry v. Ohio, 392 U.S.1 (1968). See, e.g., Arizona v. Johnson, 555 U.S. 323, 330-31 (2009). In Terry, the Supreme Court held that an officer may, consistent with the Fourth Amendment, conduct "a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." Illinois v. Wardlow, 528 U.S. 119, 123 (2000).

Reasonable suspicion requires that law enforcement officers possess "a particularized and objective basis for suspecting [a] person of criminal activity." United States v. Singh, 363 F.3d 347, 355 (4th Cir. 2004) (quoting Ornelas v. United States, 517 U.S. 690, 696 (1996)) (internal quotation marks omitted). This requires something more than an "inchoate and unparticularized suspicion or hunch." Terry. 392 U.S. at 27 (internal quotation marks omitted). It is a "'commonsense, nontechnical standard' that relies on the judgment of experienced law

---

[8] Because the court concludes that Deputy Reese lacked reasonable suspicion, the court declines to consider the Defendants' arguments regarding probable cause with respect to the initial stop.

enforcement officers, 'not legal technicians.'" United States v. Palmer, 820 F.3d 640, 650 (4th Cir. 2016) (citing Ornelas, 517 U.S. at 695).

Courts look to the "totality of the circumstances" in determining whether an officer had reasonable suspicion of criminal activity. United States v. Arvizu, 534 U.S. 266, 273 (2002). Additionally, "the articulated factors supporting reasonable suspicion during a traffic stop 'must in their totality serve to eliminate a substantial portion of innocent travelers,' and also demonstrate a connection to criminal activity." Palmer, 820 F.3d at 650 (quoting United States v. Williams, 808 F.3d 238, 246 (4th Cir. 2015)).

Here, Deputy Reese argues that the following factors created reasonable suspicion to stop Sweet's vehicle: (1) his familiarity and knowledge that the residence in question had a history of drug activity, (2) his nearly ten years of law enforcement experience, and (3) his observation of Sweet backing out of the property, stopping, and moving back towards the property when he saw Deputy Reese's vehicle approaching. (Defs.' Mem. Supp. Mot. Summ. J. 10-11, ECF No. 18-1.) The court may credit "the practical experience of officers who observe on a daily basis what transpires on the street." United States v. Lender, 985 F.2d 151, 154 (4th Cir. 1993). While courts generally defer to officers' claimed training and experience, deference is withheld "when failing to do so would erode necessary safeguards against 'arbitrary and boundless' police prejudgments." Wingate v. Fulford, 987 F.3d 299, 307 (4th Cir. 2021) (quoting United States v. Black, 707 F.3d 531, 541 (4th Cir. 2013)).

Deputy Reese's knowledge that there was a history of drug activity at the residence was also a legitimate factor for the court to consider in determining whether there was reasonable suspicion. See, e.g., United States v. Bumpers, 705 F.3d 168, 175 (4th Cir. 2013).

However, "[a]n individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime." Wardlow, 528 U.S. at 124. "Although factors, 'susceptible of innocent explanation,' when taken together, may 'form a particularized and objective basis' for reasonable suspicion justifying a Terry stop, this is not such a case." Black, 707 F.3d at 539 (citing Arvizu, 534 U.S. at 277-78).

The primary justification for the stop was that Deputy Reese had, on several occasions, observed drug activity at the residence. Deputy Reese asserts that, standing alone, his "training, experience, and observations as an officer familiar with the pervasive drug use, drug trafficking, and criminal activity at the subject property provided grounds for the initial stop." (Defs.' Obj. 1, ECF No. 29.) Aside from Sweet's mere presence in a high-crime area at a residence known for drug activity, the only particularized factor argued by Defendants, Sweet's backing up the vehicle and then pulling back towards the residence, was insufficient to create reasonable suspicion. Deputy Reese has failed to articulate why this activity was suspicious and has not argued that Sweet's actions constituted a moving violation. Further, Deputy Reese had never observed the vehicle at this residence before this occasion.

Defendants have failed to provide any legal authority for the proposition that observing a new vehicle at a residence known for drug activity supports a finding of reasonable suspicion. This argument falls short of the particularized basis needed to establish reasonable suspicion. Thus, under the totality of the circumstances, no reasonable suspicion existed to conduct the initial stop of Sweet's vehicle.

Based on the foregoing, Defendants' objection regarding reasonable suspicion fails.

### b. Qualified Immunity

Defendants argue that even if reasonable suspicion did not exist to support the stop, Deputy Reese is entitled to qualified immunity. (Defs.' Obj. 3, ECF No. 29.) "[Q]ualified immunity is recognized to protect government officials performing discretionary functions from civil damage suits 'insofar as [the officials'] conduct does not violate clearly established rights of which a reasonable person would have known.'" Porterfield v. Lott, 156 F.3d 563, 567 (4th Cir. 1998) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). That is, qualified immunity protects government officials when they act in legal "gray areas." Occupy Columbia v. Haley, 738 F.3d 107, 188 (4th Cir. 2006). "In determining whether an officer is entitled to summary judgment on the basis of qualified immunity, courts engage a two-pronged inquiry." Smith v. Ray, 781 F.3d 95, 100 (4th Cir. 2015) (citing Tolan v. Cotton, 572 U.S. 650, 655 (2014)).

The first prong requires the court to determine "whether the facts, viewed in the light most favorable to the plaintiff, demonstrate that the officer's conduct violated a constitutional right." Smith, 781 F.3d at 100 (citing Saucier v. Katz, 533 U.S. 194, 201 (2001), overruled in part by Pearson v. Callahan, 555 U.S. 223, 236 (2009) ("[W]hile [evaluating this prong] . . . is often appropriate, it should no longer be regarded as mandatory.")). The second "asks whether the right was clearly established at the time the violation occurred such that a reasonable person would have known that his conduct was unconstitutional." Smith, 781 F.3d at 100. Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson, 555 U.S. at 236.

For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates the right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). "The burden of proof rests with the official asserting the defense." Brickey v. Hall, 828 F.3d 298, 303 (4th Cir. 2016) (citing Durham v. Jones, 737 F.3d 291, 299 (4th Cir. 2013). The officer must show "either that [he] did not violate a constitutional right or that the right was not clearly established at the time [his] conduct occurred." Wingate, 987 F.3d at 311 (citing Meyers v. Baltimore Cnty., 713 F.3d 723, 731 (4th Cir. 2013).

As previously discussed, Deputy Reese's conduct amounted to an unlawful seizure of Sweet in violation of his Fourth Amendment rights. Therefore, the court must determine whether the right was clearly established. While not dispositive, Defendants have not cited to a single case finding reasonable suspicion based on analogous facts. Ashcroft v. al-Kidd, 563 U.S. 731, 741 (2011) ("We do not require a case directly on point but existing precedent must have placed the statutory or constitutional question beyond debate."). Further, research reveals no case with analogous facts.

However, it was clearly established in January 2020 that a Terry stop requires officers to have reasonable suspicion. It was also clearly established that mere "presence in an area of expected criminal activity" is insufficient to "support a reasonable, particularized suspicion that the person is committing a crime." Wardlow, 528 U.S. at 124. The Fourth Circuit has made clear that officers will not be permitted to misuse innocent facts as indicia of suspicious activity. Black, 707 F.3d at 539. Because there was no reasonable suspicion to conduct the initial stop and Deputy Reese violated Sweet's clearly established constitutional rights, he is not entitled to qualified immunity in regard to the initial stop. Thus, Defendants' objection is without merit.

### III. CONCLUSION

After a thorough review of the magistrate judge's Report and the record in this case, the court adopts Magistrate Judge Austin's Report and Recommendation and incorporates it herein by reference.

It is therefore

**ORDERED** that Defendants' motion for summary judgment, docket number 18, is granted as to Sweet's state law and § 1983 claims with the exception of Sweet's claim against Deputy Reese regarding the traffic stop. It is further

**ORDERED** that Sweet is granted relief on his illegal stop claim against Deputy Reese and awarded nominal damages in the amount of one dollar ($1.00).

**IT IS SO ORDERED.**

s/Henry M. Herlong, Jr.
Senior United States District Judge

Greenville, South Carolina
September 2, 2021

### NOTICE OF RIGHT TO APPEAL

Sweet is hereby notified that he has the right to appeal this order within thirty (30) days from the date hereof, pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.